## REYNOLDS *vs.* SWAIN ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
WATTS PRESIDING.

A contract of lease, either verbally or in writing, made by one partner, is binding on the partnership, when it appears the firm occupied the leased premises, and in which the affairs of the partnership were conducted.

EASTERN DIST.
*April,* 1839.

REYNOLDS
*vs.*
SWAIN ET AL.

Even in ordinary partnerships, the contract of one partner, made without the authority of the others, is binding on them, if it appears the partnership was benefited thereby.

Where a tenant abandons the leased premises before the expiration of the lease, he *is at once bound* for the rent of the *whole term,* and may be sued.

The repeal of the Roman, Spanish and French civil laws, in the article 3521 of the Louisiana Code, and the repealing act of 1828 only embraces the positive, written or statute laws of those nations and of this state, such as were introductory of a new rule, and did not abrogate the established *principles* of law, and settled by the decisions of courts of justice.

The principles settled in the case of *Christy* vs. *Cazanave,* 2 *Martin, N. S.,* 451, making tenants who *abandon* their lease, *liable at once* for the rent of the *whole term,* although drawn from the Roman civil laws, which have no intrinsic authority here, yet the reason of them has great cogency, and are adopted for the elucidation of principles applicable to analogous cases.

This was an action on a verbal lease, to recover the sum of fifteen hundred dollars, for one year's rent, *due and to become due.*

The plaintiff alleges, that he leased to the defendants, W. W. & T. Swain, through his agent, by verbal agreement with W. W. Swain, a certain brick tenement, on the corner of Poydras and Magazine streets, in the city of New-Orleans, for the *price* of fifteen hundred dollars per annum, payable in monthly instalments of one hundred and twenty-five dollars, each as they became due; the lease to commence the 1st day of November, 1836, and continue for one year. He further alleges, that the defendants occupied the leased premises, as apothecaries, under the firm of W. W. Swain & Co., from the 1st of November, 1836, until the last of December following, (two months,) and then abandoned and removed from them without cause, refusing to pay the rent; that they have thereby violated their said lease, and become liable for the entire amount thereof. He then prays judgment *in solido* against the defendants, for the whole sum claimed.

This suit was instituted the 26th of April following the commencement of the lease.

The defendant pleaded a general denial. Upon these pleadings and issues the cause was tried.

The plaintiff introduced as a witness the agent who made the contract of lease, who deposed, that he leased the brick tenement or store mentioned, to the defendants, for one year, commencing on the 1st of November, 1836, for the price of fifteen hundred dollars, payable monthly, in instalments of one hundred and twenty-five dollars each. That this agreement was made verbally with Wm. W. Swain, one of the defendants, at the time the lease was to begin, and that about fifteen days afterwards he presented a written lease to the defendants, who refused to sign it. He then told them he would hold them responsible for the rent on their verbal lease. It appeared, the firm of Wm. W. Swain & Co., which was composed of the defendants, occupied the premises about two months, and left them without any cause.

The plaintiff's agent refused to receive the keys, and wrote them a note that he would hold them responsible for the lease.

This testimony was corroborated by another witness, and by the written lease which had been tendered.

The district judge was of opinion, the verbal lease was proved, as also its violation by the lessees, and that the plaintiff was entitled to recover the entire sum claimed. Judgment was rendered in favor of the plaintiff for fifteen hundred dollars, with leave to take out a general execution or special execution of seizure of the property on the premises, subject to privilege for the rent, for the sum of eight hundred and seventy-five dollars, being the amount of rent due the 1st day of June *instant*, and so on from month to month, for the sum of one hundred and twenty-five dollars per month, on refusal of defendant to pay the same. The defendants appealed.

*Curry*, for plaintiffs, contended, that the testimony showed that the defendants occupied for a while the premises men-

tioned in the petition, under a verbal lease, made for one year, from the 1st of November, 1836, for which they bound themselves to pay the sum of fifteen hundred dollars in monthly instalments of one hundred and twenty-five dollars, from month to month, until the expiration of the lease. This is the amount of the sum claimed.

2. The testimony further shows, that the defendants abandoned and violated their lease, at the end of two months after the commencement of the term, without cause, and have refused to pay the rent. These facts being shown, the plaintiff is entitled to sue at once and recover the sum of fifteen hundred dollars for rent *due and to become due* on said lease. The law authorizes landlords, and secures to them the privilege of enforcing the contract of lease for the *whole term*, if the tenant leaves the premises before the expiration of the lease. See *Christy* vs. *Cazanave*, 2 *Martin, N. S.*, 451.

3. The district judge gave judgment *in solido* against the defendants for the sum claimed, but only allowed execution to issue for the sum actually due at the time, and for the balance, to issue from month to month until it is all paid. The plaintiff does not complain of this judgment, and prays that it be affirmed with costs.

*T. Slidell*, for the defendants and appellants, insisted, that a partnership and the property of the firm, cannot be made liable for the debt or contract made separately and upon the individual responsibility of one of the partners, as was the case here. The testimony shows, that the contract of lease was made with Wm. W. Swain individually. It would be doing injustice to the other partner, who had no contract with the plaintiff; and to the partnership creditors, whose claims on the partnership property should be first paid.

2. This suit was prematurely brought, as to that part of the rent claimed, which was not due at the time of the institution of suit; and the judgment should be reversed for that amount. The case of *Christy* vs. *Cazanave*, which is relied on to sustain the plaintiff's demand, for the entire amount of rent, due and to become due on this lease, cannot have the force of authority. It was decided in 1824, before

either the adoption of the Louisiana Code, or passage of the <span>EASTERN DIST.</span> act of 1828, both of which expressly repeals all the civil <span>*April*, 1839.</span> laws not contained in the code. This decision is founded on REYNOLDS an express provision of the Roman civil law, which has long *vs.* SWAIN ET AL. , since been repealed in this state.

*Martin, J.*, delivered the opinion of the court.

The plaintiff claims from the defendants, commercial partners, *in solido*, one year's rent of a store, payable by monthly instalments, they having left the premises before the expiration of the lease.

The defendants pleaded the general issue.

The court gave judgment *in solido*, for fifteen hundred dollars, with leave to take out execution for the sum of eight hundred and seventy-five dollars, being the amount of rent due and payable at the date of the judgment, and so from month to month, for the sum of one hundred and twenty-five dollars, until the whole be paid. The defendants appealed.

Their counsel has contended, that the premises were rented by one of the defendants, in his own name, and, therefore, the partnership is not bound for the rent.

2nd. The suit was premature, for part of the rent was not due at the time it was brought.

It appears that one of the defendants rented the premises, verbally, and afterwards a written lease was offered for his signature, in which his individual name was used. But it appears, also, that the store was occupied by the partnership until it was abandoned. This latter circumstance shows that the contract was made for the affairs of the partnership ; it is, therefore, bound by the act of one of the partners, though made in his individual name. Even in an ordinary partnership, the contracts of a partner, though without the authority of the others, bind them, provided it be proved that the partnership was benefited by the transaction. *Louisiana Code,* 2845.

In the case of *Christy* vs. *Cazanave*, 2 *Martin, N. S.*, 451, this court held, that if the tenant abandoned the premises during the lease, he is bound for the rent for the whole term

*A contract of lease verbally or in writing, made by one partner, is binding on the partnership, when it appears the firm occupied the leased premises, and in which the affairs of the partnership were conducted. Even in ordinary partnerships, the contracts of one partner made without the authority of the others, are binding on them, if it appears the partnership was benefited thereby.*

EASTERN DIST. at once. It has been contended, that this decision took place
*April*, 1839. under the civil laws of this state, which were repealed in
REYNOLDS 1828, and before the promulgation of the Louisiana Code,
*vs.* which provides that the Spanish, Roman, and French laws,
SWAIN ET AL.
Where a tenant which were in force in this state when Louisiana was ceded
abandons the to the United States, and the acts of the legislative council,
leased premises
before the expi- of the legislature of the territory of Orleans, and of the legis-
ration of the
lease, he is at lature of the state of Louisiana, are repealed in every case,
once bound for which are specially provided for by that code, and that they
the rent of the
whole term and shall not be invoked as laws, even under the pretence that
may be sued.
their provisions are not contrary or repugnant to those of the
code. See *Louisiana Code, article* 3521.

The repeal spoken of in the code, and *the act of* 1828,
cannot extend beyond the laws which the legislature itself
had enacted; for it is this alone which it may repeal; *eodem
modo quiquit constitutur, eodem modo dissolvitur.*

The civil or municipal law, that is, the rule by which par-
ticular districts, communities, or nations are governed, being
thus defined by Justinian—"*jus civile est quod quisqui sibi
populus constituit.*" 1 *Blackstone's Commentaries*, 44. This
is necessarily confined to positive or written law. It cannot be
extended to those unwritten laws which do not derive their
authority from the positive institution of any people, as the
revealed law, the natural law, the law of nations, the laws

The repeal of
the Roman, of peace and war, and those laws which are founded in those
Spanish and relations of justice that existed in the nature of things, ante-
French civil
laws, in the arti- cedent to any positive precept.
cle 3521 of the
Louisiana Code, We, therefore, conclude, that the Spanish, Roman, and
and the repeal-
ing act of 1828, French civil laws, which the legislature repealed, are the posi-
only embraces tive, written, or statute laws of those nations, and of this state;
positive, written
or statute laws of and only such as were introductory of a new rule, and not those
those nations and
of this state, which were merely declaratory—that the legislature did not
such as were in- intend to abrogate those principles of law which had been
troductory of a
new rule, and established or settled by the decisions of courts of justice.
did not abrogate
the established Testing the judgment of this court, in the case of *Christy*
principles of
law, and settled *vs. Cazanave*, by these rules, we do not find it grounded on
by the decisions any statute of Spain, of the late territory or the present state.
of courts of jus-
tice. We know not any Roman or French statute which was in

force in this country at the period of the cession, and to which the repeal in the code and the act of 1828 could extend. Nevertheless, it is the daily practice in our courts to resort to the laws of Rome and France, and the commentaries on those laws, for the elucidation of principles applicable to analagous cases.  Although the Roman law, on which the case of *Christy* vs. *Cazanave* was determined, had no intrinsic authority here, the reason that dictated that law has great cogency.  'When a tenant removes his goods from the premises, and abandons them, he withholds from the landlord the pledge he had given for the payment of the rent.  It is, therefore, just that the latter should be permitted immediately to secure himself, if he can, by the seizure of the property removed, or by a personal action against the tenant.

The district judge has provided for the security of the latter, by directing that the execution should not immediately issue for more than the amount of the debt actually payable ; and afterwards, at the end of every month, for the monthly rent, affording him the opportunity of seeking relief, if he has any right thereto, on account of any rent received by the plaintiff from other tenants.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.