## GRAY vs. TIERNAN, CUDDY & CO.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The purchase of house-hold furniture for the use of one of the partners, although occasionally used to entertain the customers of the firm, cannot come within the scope of the partnership.

A partnership is not bound for a note signed by one of the partners with the partnership name, and which is shown to have been given for the price of furniture for his individual use.

This is a suit by the payee and holder of a promissory note signed with the partnership name of the defendants.

Charles Tiernan, the liquidating partner of the defendants' firm pleaded a general denial and averred that the partnership was not in any way liable for the note in suit, because it was not given for the benefit of the concern, but was an individual transaction for the private benefit of one of the partners who then conducted the business of the firm. An interrogatory was propounded to the plaintiff by which it came out, that Cuddy, the resident partner gave the note in question for the price of house-hold furniture purchased from the plaintiff, and used the partnership name, although the furniture was for his own use.

Upon these pleadings and issues the question arose, was the partnership liable for the note?

The evidence showed that the note was entered on the books of the firm, to "house expenses;" that Cuddy was in

the habit of taking their customers to his house to dine with him, &c.

The District Judge was of opinion the firm was bound for the note and gave judgment for the plaintiff.

The defendants appealed.

*Maybin,* for the plaintiff.

*Strawbridge,* contra.

*Bullard, J.* delivered the opinion of the court.

The question presented in this case is whether the note sued on, which was signed by one of the partners, in the name of the firm, be evidence of a partnership debt and binding upon the firm, either originally or in consequence of subsequent transactions. It was given to the plaintiff by Cuddy, one of the partners, for certain household furniture purchased by him for his own house, and who in the absence of Tiernan, his partner, who is now sought to be charged, entered it in the books of the firm under the head of "*house expenses.*" It further appears that the furniture was used by the partner who had purchased it in his own house, and that he occasionally entertained the customers of the house, and that ultimately it was seized and sold under an execution to pay a debt of the partnership.

It cannot be supposed that the purchase of household furniture for the use of one of the partners, although occasionally used to entertain the customers of the firm, comes within the scope of authority conferred by the contract of partnership upon each member of a commercial firm; Gow, 57. The proof in the record that the purchase was made for the use of one partner, repels the presumption arising from the use of the partnership name, that the debt was one of the partnership in its origin. It remains to enquire whether it has become such, either by the entry in the books as above mentioned, or because the furniture was afterwards seized and sold to pay a debt of the firm.

*[Margin note: The purchase of household-furniture for the use of one of the partners, altho' occasionally used to entertain the customers of the firm, cannot come within the scope of the partnership.]*

EASTERN DIS.
*April,* 1841.

GRAY
*vs.*
TIERNAN,
CUDDY & CO.

The charge in the books under the head of " house ex-penses" without any proof that by the terms of the association each party was allowed to charge his expenses of that kind to the firm, and to what extent, and without such charge being known to the partner living abroad, does not in our opinion suf-ficiently show the liability of the firm. It is true, two expe-rienced merchants have testified in the case, that in their opi-nion if a partner having the sole management of the concern should be at the expense of keeping house for the entertain-ment of the friends of the house who should visit the city, they would consider the expense a fair charge, if it were for the in-terest of the partnership, deducting a fair proportion for his own living. Admitting that such evidence is entitled to consi-deration upon a question of law, yet the case supposed by the witnesses does not appear parallel to this ; and we are without the means of appreciating the advantage which a commercial concern might derive from the occasional entertainment of its customers, or of estimating the share which ought to be de-ducted for the expenses of the acting and resident party. But this case goes much further than that supposed by the wit-nesses. The firm is not charged with the expense of house-keeping but with the cost of the furniture used occasionally to accommodate the customers of the firm. By parity of reason-ing why would not the house rent of the partner or the price or hire of his servants be a fair charge against the firm ? The cases relied on by the counsel of the appellee from the 6 Martin, N. S., 48, and the 13 La. Rep. 193, do not appear to us to sup-port him. In the first case the question was whether Dubuys & Longer were partners of Dupuy in relation to third persons who had dealt with Dupuy in his own name ; and the court held that one partner binds the others when he purchases in his own name goods in which the partnership deals. In the case re-ported in the 13th La. Rep., 193, we held that a contract of lease by one partner, of premises *occupied by the firm,* is bind-ing on it. None of these decisions militate against the princi-ples recognized by this court in the following cases : 4 Mar-

EASTERN DIS.
*April*, 1841.

GRAY
*vs.*
TIERNAN,
CUDDY & CO.

A partnership is not bound for a note signed by one of the partners with the partnership name, & which is shown to have been given for the price of furniture for his individual use.

tin, 377; 4 Martin, N. S., 347; 1 La. Rep., 28, and 10 idem, 416. But if the original purchase of the furniture was not within the scope of authority, resulting from the partnership, and no ratification can be inferred from the entry in the books by the partner himself in the absence of the one now sued, how is the case altered by the fact that the same furniture was afterwards seized and sold to satisfy a judgment recovered against the firm? We do not doubt, but that in a settlement between the partners the value of the furniture thus sold would form a proper charge against the firm in favor of the owner, because his property has been employed for the benefit of the concern—but it is not logical to conclude that his vendor could therefore recover its price from the firm. Such a doctrine would carry us much too far; indeed it is difficult to say where it would stop. It would embrace every species of property on whosoever credit the purchase may have been made—whenever it was on credit. The partner himself whose property may have been sold to pay a partnership debt, could claim of his partners on a final settlement only the amount by which the firm had been benefitted; but according to the doctrine contended for, his vendor would have greater rights and would be entitled to the original price. We are not prepared to sanction such a principle.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be reversed, and that ours be for the appellants with costs in both courts.